UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| VERNISHA BROOKS, | : | Case No. 3:17-cv-373 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I. Introduction

Plaintiff Vernisha Brooks brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She applied for benefits on April 1, 2019, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Benjamin Chaykin concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), and the administrative record (Doc. #s 8-9).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Chaykin's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since February 2, 2013. However, she is only eligible for benefits since April 1, 2014. At that time, she was forty-five years old and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). She has a limited education. *See id.* § 416.964(b)(2).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Chaykin that she last worked in 2008 with a temp service at a packing company. (Doc. #9, *PageID* #3566). When she completed that assignment, she was offered another assignment but she was not able to accept it because the job required her to stand in one spot for long periods of time. *Id.* at 3566-67.

Plaintiff has difficulties with standing and walking due to swelling in her legs. *Id.* at 3570. The swelling starts in her calves and moves down to her ankles and feet. *Id.* She takes gabapentin but it does not work as well as she thinks it should work. *Id.* To reduce swelling, Plaintiff's doctors told her to keep her legs elevated. *Id.* at 3571-72. She elevates them three times a day for two hours at a time. *Id.* at 3572. Plaintiff also has pain in both knees. *Id.* She had a cortisone gel shot in each knee and they did not help at all. *Id.* As a result of her legs swelling and her knee pain, Plaintiff can only be on

her feet for five minutes before she needs to sit down. *Id.* at 3572-73. She can sit without her legs elevated for twenty to thirty minutes. *Id.* at 3573. In addition, Plaintiff is not able to lift anything over fifteen pounds because of problems with her lower back. *Id.*

Plaintiff has sarcoidosis. Her lungs swell up, she has difficulty breathing, she gets winded, and she has to sit down. *Id.* at 3568. For a long time, her sarcoidosis was treated with steroids. *Id.* However, she started to hallucinate and her doctor weaned her off them. *Id.* At the time of the hearing, she used two inhalers daily. *Id.* at 3568-69. Although the inhalers help, the effects do not last very long. *Id.* at 3569. She indicated that exposure to dust, fumes, and high temperatures exacerbate her lung problems. *Id.* at 3569-70.

Plaintiff testified that she has "bi-polar depression" and PTSD. *Id.* at 3574. She sees a psychiatrist, Dr. Patel, who recently increased her dosage of lorazepam because of Plaintiff's anxiety. *Id.* at 3574-76. When asked to describe her symptoms, Plaintiff explained that she does not want to leave her room, she cries and does not know why, and she sometimes goes days without showering. *Id.*

Plaintiff lives with her husband and eighteen-year-old son. *Id.* at 3565. She sometimes cleans up around her house but can only do so for a little while and then has to sit down. *Id.* at 3575. She has a driver's license and normally drives twice a week—to run to the store or if she has an appointment. *Id.* at 3566. She completed the tenth grade and has not obtained a GED. *Id.*

B.  **Medical Opinions**

   i.  *Amita Patel, M.D.*

Dr. Patel, Plaintiff's treating psychiatrist since July 2011, completed a mental impairment questionnaire in February 2016. (Doc. #8, PageID #s 3555-57). She diagnosed bipolar disorder, panic disorder, and post-traumatic stress disorder. *Id.* at 3555. Dr. Patel identified several of Plaintiff's symptoms, including mood disturbances, depressed mood, emotional lability, recurrent panic attacks, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, restlessness/feeling keyed up, intrusive recollections of a traumatic experience, palpitations/pounding heart, persistent irrational fears, psychomotor changes, generalized persistent anxiety, and impairment in social/occupational functioning. *Id.*

Dr. Patel noted that Plaintiff's treatment includes psychiatric medication and psychotherapy; her response to treatment is stable; and her prognosis is guarded. *Id.* at 3556. She opined that Plaintiff would miss between one to two days a month because of her impairments and treatment. *Id.* Further, she would be distracted by her symptoms for one-third to one-half of a workday. *Id.* Dr. Patel concluded that Plaintiff is not able to perform full-time competitive work on a sustained basis without missing work more than two times a month or being off task more than fifteen percent of the work day. *Id.* at 3557.

   ii.  *Carlos Cheng, Ph.D.*

Dr. Cheng evaluated Plaintiff on March 10, 2015, on behalf of the state agency. *Id.* at 2440-44. She reported that she struggled with a "depressive mood" her entire life. *Id.*

at 2440. Additionally, she has flashbacks to when she was five years old and witnessed the bloodied room where her mother killed her boyfriend (in self-defense). *Id.* at 2440-41. Plaintiff told Dr. Cheng that she completed the tenth grade but did not graduate and has not attempted to get her GED. *Id.* at 2441. During school, she was in special education classes for learning problems and was held back five times. *Id.*

Dr. Cheng noted that Plaintiff was cooperative but somewhat dramatic during the exam. *Id.* at 2443. She presented as distraught and frustrated. *Id.* "Her affect was mild to moderately constricted, occasionally frowning with brief tearful spells, but had some range and seemed exaggerated and shallow at times. *Id.* Depending on the content and context of their conversation, her facial expressions varied from intense and dramatic to appropriate. *Id.* at 2444.

Dr. Cheng noted that there were no major inconsistencies in the information reported by Plaintiff. *Id.* at 2444. And although she did not indicate any unusual or unlikely combination of psychological symptoms, she appeared to exaggerate the severity of her impairment in both emotion and cognitive functions. *Id.* Thus, Dr. Cheng concluded that the validity of her self-report information appeared questionable. *Id.*

Dr. Cheng opined that Plaintiff's adequate performance on a brief abstract-reasoning activity and short-term memory tasks suggests no difficulties in understanding and remembering instructions. *Id.* at 2445. Further, her adequate task persistence when answering questions suggests no difficulty in maintaining some work pace. *Id.* at 2445-46. Dr. Cheng noted that Plaintiff displayed no indication of distraction during the evaluation—including no requests to repeat questions—and she did not describe a history

5

of problems with attention and concentration. *Id.* at 2446. Additionally, he found that Plaintiff interacted appropriately during the evaluation and that suggests no difficulty in the level of engagement with co-workers and supervisors. *Id.* Overall, she presented within average limits of intellectual functioning which, according to Dr. Cheng, suggests no cognitive impairment in understanding or responding to supervisor feedback and adequately relating to co-workers in an appropriate manner. *Id.* And, she presented with adequate cognitive ability to manage work pressures. *Id.* at 2446.

    *iii.*  *Karen Terry, Ph.D., & Paul Tangeman, Ph.D.*

  Dr. Terry reviewed Plaintiff's records on July 31, 2014. *Id.* at 1905-15. She found that Plaintiff had four severe impairments—sarcoidosis, obesity, other and unspecified arthropathies; and affective disorders. *Id.* at 1910-11. Dr. Terry opined that Plaintiff has a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. *Id.* Further, Plaintiff could perform unskilled low-stress work with no assembly line production quotas and that was not fast paced. *Id.* at 1914. In addition, she could have occasional contact with the public, co-workers, and supervisors. *Id.* at 1915. "She retains the ability to perform routine job duties that remain static and are performed in a stable, predictable work setting that doesn't undergo frequent changes; any necessary changes need to occur infrequently and be adequately and easily explained ahead of time." *Id.* Further, because of her PTSD and panic disorder, she should not travel in unfamiliar places, frequently interact with unfamiliar others, or use public transportation

6

as a part of her job duties. *Id.*

On March 25, 2015, Dr. Tangeman reviewed Plaintiff's records and affirmed Dr. Terry's findings. *Id.* at 1920-35.

### III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to

7

support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Chaykin to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since April 1, 2014.

Step 2: She has the severe impairments of residual effects of sarcoidosis. Mild obstructive airway disease, history of deep vein thrombosis, mild osteoarthritis bilaterally status post left arthroscopic surgery, obesity, depression, and anxiety.

8

| | |
|---|---|
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) no climbing of ropes, scaffolds or ladders, (2) occasional climbing of ramps or stairs, (3) occasional stooping, crouching, balancing, kneeling, and crawling, (4) standing and walking up to 4 hours, but for no more than 30 minutes per hour (5) no exposure to dangerous hazards such as unprotected heights or dangerous machinery, (6) limited to perform[ing] simple tasks but not at a production rate pace or strict quota, (7) occasional interaction with supervisors, coworkers, and the public, (8) limited to a static work environment, with few changes in the work setting, (9) no concentrated exposure to dusts, odors, fumes or other pulmonary irritants, (10) no teamwork or tandem tasks." |
| Step 4: | She is unable to perform any of her past relevant work. |
| Step 5: | She could perform a significant number of jobs that exist in the national economy. |

(Doc. #8, *PageID* #s 1820-35). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 1835.

## V. Discussion

Plaintiff contends that ALJ Chaykin erred by failing to properly evaluate the medical opinions of record. Further, she asserts that the ALJ failed to properly assess her need to elevate her leg and the impact of her pain.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally

9

given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id.*

In the present case, the ALJ acknowledged Dr. Patel was a treating physician but concluded that her opinion was not entitled to controlling weight and assigned it little

weight. (Doc. #8, *PageID* #1832). However, the ALJ misstated the treating physician rule:

> A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight (Social Security Ruling 96-2p).

*Id.* at 1832.

There is a significant difference between requiring an opinion be *not inconsistent* with other substantial evidence and requiring an opinion to be *consistent* with substantial evidence. The Social Security Administration's definition of "not inconsistent" illustrates the significance: "This is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., **it does not have to be consistent with all the other evidence**) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Soc. Sec. R. 96-2p, 1996 WL 374188, at *3 (emphasis added).

By requiring Dr. Patel's opinion be consistent with other substantial evidence, the ALJ required more of her opinion than is set forth in the Regulations. The ALJ's higher standard is evidenced by his first reason for discounting Dr. Patel's opinion: "Dr. Patel's opinion is inconsistent with the overall evidence of record, which indicates the claimant has showed a good response to treatment, with generally benign mental status examination findings, and no more than moderate limitations in concentration, persistence, or pace and social functioning[.]" (Doc. #8, *PageID* #1832) (internal citation

omitted). As noted above, a treating physician's opinion does not need to be consistent with all the evidence of record. Soc. Sec. R. 96-2p, 1996 WL 374188, at *3.

Even if the ALJ did not err in applying the treating physician rule, the ALJ failed to consider Dr. Patel's opinion under the factors. "Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." Soc. Sec. R. 96-2P, 1996 WL 374188, at *4; *see Blakley*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)) ("If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors ….").

To the extent that the ALJ was discussing the consistency factor (rather than the second condition of the treating physician rule), this also constitutes error because "these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)).

The ALJ only gives one other reason for rejecting Dr. Patel's opinion. He found that it conflicts with the Global Assessment of Functioning (GAF) scores of 61 to 70 in her notes. (Doc. #8, *PageID* #1832). Those scores indicate mild symptoms or

difficulties. *Id*. But, at the time of ALJ Chaykin's decision in September 2016, the use of GAF was no longer recognized by the American Psychiatric Association as a valid psychiatric measurement tool. *See Diagnostic and Statistical Manual of Mental Disorders* at p. 16 (AM. PSYCH. ASS'N, 5th ed. 2013) (DSM-V) (eliminating GAF upon the recommendation "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity ... and questionable psychometrics in routine practice"). Consequently, Plaintiff's GAF scores were not reasonably probative evidence in conflict with Dr. Patel's opinion. *See Barnett v. Colvin*, 2015 WL 471243, at *11 (S.D. Ohio 2015)[1] (quoting *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) ("'A GAF score is thus not dispositive of anything in and of itself ....'"))[2].

The ALJ provided no other reasons for assigning Dr. Patel's opinion little weight. "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial*

---

[1] R&R adopted, 2015 WL 777646 (Feb. 24, 2015).
[2] In a 2016 case, *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016), the Sixth Circuit continued to acknowledge the GAF's usefulness to ALJs. *Miller*, however, relied on a case from 2012, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002), which was decided well before the DSM V dropped the GAF scale in 2015. Additionally, *Miller* evaluated an ALJ's decision in 2011 before the DSM V eliminated the GAF scale in 2015. And, *Miller* is silent about whether ALJs may use GAF scores to discount a treating psychiatrist's opinions after DSM V dropped the GAF scale. *Miller* is therefore distinguished from the present case, which addressed ALJ's Chaykin's September 2016 decision, after the effective date of DSM V.

13

*evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Vernisha Brooks was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

September 27, 2019                        *s/Sharon L. Ovington*
                                                           Sharon L. Ovington
                                                            United States Magistrate Judge